Good afternoon, everyone. Welcome to the Illinois Appellate Court, 1st District, 6th Division. We ask that the lawyers who are going to argue please step up, introduce themselves, and tell us whom you represent. Good afternoon. My name is James Dahl, D-A-H-L. I represent Mr. Harry Israel, the plaintiff below, the opponent here. Good afternoon, Your Honor. My name is Dan Lynch. I represent Diane Israel, who is the appellee and was the defendant below. For your reference, I think the parties have generally agreed that to streamline things, we will refer to each other's plaintiff by their first names. I would not be surprised by you doing this. Thank you. Under the Supreme Court rules, each side has about 20 minutes for their main argument. We'll reserve 10 minutes for rebuttal. For you, Mr. Dahl, we may change that if we need more time or if the questions become repetitive. Please remember to speak loudly. Our microphones do not amplify well. They're just here to record what's being said. Please understand that we have read the briefs and are familiar with the facts of the case. Devote your time to the strongest arguments, and as you might suspect, we are interested in the jurisdictional issues that we raised by our prior order. Justice Harris is the third member of the panel. He's unable to be here today, but he will listen to the tape recording and participate in that deliberations. If it pleases the Court, again, my name is James Dahl. I represent Terry Israel. Terry, as I indicated a moment ago, was the defendant below and the appellee here. Your Honor, if the jurisdictional issue is still pertinent, and the Court indicated it was, I want to address that first, please. If a piece of paper filed before Judge McGrath had said, that motion pursuant to Rule 214.01, Section 214.01, there would be, I think, no concern about whether or not the Court had jurisdiction. That didn't happen. We then have to look at... Counsel, may I ask you, what are the requirements for the filing of a 214.01 petition? I think that there needs to be new matter, usually it's new evidence, and that has to be presented to the Court in a petition, and that usually requests that the previously entered judgment be vacated. Is there a time frame in which the petition has to be... Two years. Okay, but it has to be presented not later than two years, but is there a time frame on the front end? Yes, absolutely, Your Honor. I don't think it can be presented until there's a final judgment that's been entered, and that was the case here. Thirty days after the final judgment is entered, isn't that what the Rule says? I'm not sure. I really am not sure whether those... Within 30 days, you can just do a motion to reconsider. I think that when we've done one motion to reconsider, which was the case here, I think that then becomes final, and we're not allowed, as the case is, to file a second series and others, but there are no serial or in-serial motions to reconsider. At a half-final judgment, having them deny the motion to reconsider, I think it's ultimately appropriate at that time, any time after that motion to reconsider is denied, to file a 214-01 petition. So your contention is that the entry of that judgment begins, that's when the 30-day period, that's the date of when the 30 days start running? That's the date within which you've got to make your motion to reconsider. When the motion to reconsider is denied, then it's final, and that's a final judgment. It's not subject to anything other than the field. I'm specifically asking about the 214-01 petition. You cannot file such a petition until 30 days after. The judgment from which you are proceeding, which is the underlying cause for the 214-01 petition, the ruling must have occurred at least 30 days prior to the time that you filed that petition. I'm asking, what is that date? That would be the date on which the original judgment was entered, which was the February date, and that was well more than 30 days prior to the filing of the 214-01. But are you basically saying that you can file both a motion to reconsider and a 14-01 and have them both? No, no, no. At the same time? No. I think that you have to file the section 214-01 after the motion to reconsider has been denied, which was done in this case. And your position is that 30 days before which a 214-01 may not be filed runs from the original judgment and not the date of the judgment denying the motion to reconsider? Or am I reading you wrong? That's a fair interpretation of what I said, Judge. This was not an issue that the court raised in its order about the questions concerning jurisdiction. There was no reference to the time of the filing of the 214-01 petition. That's true. I understand that the fact of the matter is that I think that you can file, because you cannot file another motion to reconsider after the motion to reconsider is denied. I think the fair thing that the equitable reading of the rule is you can file 30 days after the final amendment was entered, because otherwise there would be a delay for no apparent reason. The fact of the matter is you file a motion to reconsider. It's denied. There is no reason to wait 30 more days. If, as it was the case here, the new evidence appears days, literally a day after, one business day after the decision was entered denying the motion to reconsider, there's no reason to wait 30 days. Let me ask about the portion of your appeal that's before us now that asks us to overturn the circuit court's order dismissing the Fifth Amendment complaint with prejudice. Yes. Okay. When the circuit court entered that order, I don't know if you mentioned it directly, but then you raised this issue. I was not their judge, but I know there have been a lot of attorneys in this. Two sides of the equation. Two sides of the equation, okay. Your doubts. File an appeal from that order. That appeal was up here for a while. It was your side answer to be stated that was denied. The court asked for a jurisdictional statement. That was Justice Rothman, who was the presiding judge at the time. Right. I don't think that ever came in, but at some point they had DWP. There was a response to the jurisdictional question, Judge. We filed a response to that, and it just stayed there. It was then dismissed. If I can address that, I think that's fair. What I'm leading to is the question is, isn't that DWP dispositive of the portion of the appeal you have in front of us today regarding the dismissal of the Fifth Amendment complaint? I don't think so. I understand the argument that reaches that conclusion, but let me make a slight turn. I think that what happened in response to the 214-01 petition was that the court granted it and then reinstated the entire case and permitted the filing of what was then called the Sixth Amendment complaint that incorporated this interference with an inter-governance gift. So it was the action taken at the trial court that said, okay, bring the entire case back to life based on this legal status, including the claim I have dismissed as famous, and, in fact, we'll take that at the end of this case. I think that that's how I interpret what happened at the trial court with respect to the 214-01. I understand the alternative argument would be, well, the only thing that you really reinstated was the interference with a testamentary gift, and that therefore left the inter-governance gift in the appellate court, and it should have been litigated there. I think the problem with that was that— Just a second. What you just stated was very clearly stated. If that's what the trial court meant, couldn't that have been written in the court's order? I mean, you said it in a very clear way. I know what you mean, and I'm sure Justice Brewert does, too. So why wasn't—the order that's in the record doesn't say that. I think it does say those words, but it says it with this statement. And I give you leave to file the Sixth Amendment complaint, and that Sixth Amendment complaint included the claim for interference with the inter-governance gift, even though it had been dismissed, and it was going to be dismissed, and it was dismissed again. Now, I think that then is how the trial court communicated the decision to say, I vacate the judgment, I vacate the dismissal of both the inter-governance claim and the testamentary claim, and I'm putting them both back in action, and here we go. But that's just the 214 trial. No, no, no, it's a process because the ruling, in effect, dismissing either that or this claim said, the judge reaffirmed that decision, and that was understood by everyone, because here's where we end up otherwise. When we look at that otherwise, we have then, in effect, a mandatory appeal of the dismissal of one claim when another claim went to trial. Now, if you sit down and go line by line between the Fifth Amendment complaint and the Sixth Amendment complaint, you know, there's a parallel. Obviously, the Sixth Amendment complaint is only one count, as I recall. I'm not sure. Basically, every paragraph is the same with the following exceptions. The first exception is that because between the time of the Fifth Amendment complaint and the Sixth Amendment complaint, Aaron died, a lot of the words get changed, okay, for proper context. The other change appears to be that in the Fifth, we're talking about interference with an inter vivos gift, and in the Sixth, we're talking about interference with a testamentary expectancy, which came to light after he died. Then his testamentary trust became public knowledge, so to speak. I understand. But it seems to be exactly the same actions of the religious prosecutors. Except for the very significant event of the discovery of the 2010 trust, which gave to Harry the shopping center. Now, I agree with the Court. Okay. I want to be sure that I've answered all the Court's questions regarding jurisdiction, but I only want to make these comments. We're told to look at the substance of the motion I've commented on. I think we look to the intent of the author, and the author of the motion said, in connection with the reconsideration of the granting of that motion, this is a 214-01 petition and may be objected to that. Can I have a copy of your transcript?  If it is, it is. In support of jurisdiction, Judge, we identified the fact that Mr. Sperling, the attorney who was representing Harry at the time, indicated to the Court, in connection with the motion to reconsider, again, the Court's granting of that referenced the motion as having a broader personal procession to 214-01. In addition, the problem is this, Mr. Donovan, I don't want to personalize this, but I spent five years doing mortgage foreclosures across the street, and even pro se who were sort of lost in other ways, if they were trying to overturn a final judgment within 30 days, somebody told them, and not just the attorneys, to put in their 121-401 and call it what it is. And while we do have a doctrine in Illinois that we treat pleadings by what they are rather than what they may be misnamed, there's a hurdle here you've got to overcome to convince us that this is actually a 214-01 petition, because it scraps a title here and it doesn't say 214-01 anywhere in it, and it's a petition versus a motion, those are different things. Your Honor, if I may, in answer to the Court's question, at page 3 of our memo, in support of jurisdiction, with all to the Court's attention, this is at the top of the page, Kerry is not an attorney for that spoiling state of the scholars. This is in connection with the motion to reconsider the grant of the motion. Quote, Judge, to be clear, section 14-01 specifically authorizes the motion to be brought based on newly discovered evidence. He clearly treated it then. I think most importantly, and we want this to the Court's attention as well in our submission on jurisdiction, a public counsel, counsel here representing the defendant, not on one, but on two occasions, I'm sorry, on four occasions, once before the trial court, and three times before this court has said, and this is from the motion to dismiss the appeal, the appeal relating to the decision with respect to dismissing the inter vivos gift claim. They said, he and Harry Reza are successfully in obtaining relief pursuant to 735-ISDS-5-2-1401. They again said in their brief, not once, but twice, in their brief, they stated at page 18, quote, Kerry filed a section 214-01 petition, which ultimately resulted in the circuit court allowing the 6th Amendment complaint, and it goes on. Guess what? Second time in the same brief, at page 35, he, again referring to Harry, was however successfully in obtaining relief pursuant to 735-ILCH-5-2-1401. The author thought it was a 214-01. The defendant who opposed it thought it was a 214-01. The court, I would respectfully submit, understood that it was a 214-01, because she heard the audience regarding a claim that it should be treated as a serial, and so on, motion to reconsider, and she didn't do that. And the fact is, this court was well familiar, as I think any practicing attorney or judge is, with Sears. The fact of the matter is, you don't get to file multiple motions to reconsider. She certainly appreciated that the only way she could address it in rule, and not just dismiss it out of hand, was to treat it as a 214-01. In response to the further motion for reconsideration, the opposing side specifically cited Sears in the court below. And I don't see anything in the record where your side came back and said, oh no, this really isn't what we called, on its face, a further motion for reconsideration. It's really a 1401 petition. I think they opposed it, Judge. I don't specifically recall, and I'm not here to represent the court. Yes, they did say Sears didn't apply. And I thought they addressed that. But again, you didn't come back with the words 214-01. But again, and I want to close my remarks with respect to jurisdiction, and then I'll have whatever questions the court has. We would not be here, having this discussion, if a reference was made, in the title, in the body, anywhere, 214-01. And you started your argument with that comment, all right? And I suppose the point, on the other side of that equation, is that if, in fact, the pleading had been captioned, as a 214-01, and had all the elements of the 1401, we would have had a much different response to it, and the court would have treated it, more explicitly, under that rubric. I know you don't, and this is something 99% of the lawyers don't know out there, is that when a 214-01 petition is filed, you plead to it as if it were a complaint, which means you either answer it, you know, deny it, or you do a 615 or 619. You don't just respond to it, which is what we have here. Your Honor, I understand that I may be one of the 1%, but I do think that, in terms of the substance of this pleading, it was intended to be 214-01, with critical newly discovered evidence. A document that had been withheld by the defendant, it took a court order to get it, they moved to extend the due date on the court order, and then, coincidentally, two business days after the denial, that document comes forth that says, yeah, Harry, in 2010, Dad wanted you to have the center. Mr. Dowell, just so I'm clear, your argument is that, although this pleading isn't captioned, it's a 214-01 motion, you met all the elements, you talked about your due diligence in finding this new evidence and bringing it forward as soon as you had discovered it, and you met the time parameters that I asked you about at the beginning of the argument. Is that what you said? Yes, Your Honor. And I think, in terms of the diligence, I don't think you can get more diligent than I think it was three business days or four business days after the 2010 trust was produced, this document was filed. Okay. You know, this is just a comment, but as Justice Deloitte said, or maybe you said, it would have certainly been much more direct had this motion been captioned in the way you are now portraying it to the court. It would have certainly, and it would have given the other side a more clear-cut idea of the issue that you would be arguing. So I can see that they will be arguing that, you know, this is not what they thought you were presenting, so it presents somewhat of a surprise to them. You know, that is certainly one interpretation of what this presents, and we, as a court, we have to, basically, we have to look at precedent and we have to write it in a way that follows precedent, whatever we decide. And what you're saying is really you're asking us in a way to go out on a limb and I'm just asking you to really make sure that you're giving us whatever support you think is necessary for us to do what you're asking us to do. You know, I have, and I think one of the troubling things is that the opponents indicated that they treated it as a 214-01. They told this court not once but three times they regarded it as a 214-01. I don't think it can get, they don't think it's helpful to us. I think, in addition, I'd be intrigued if there's an argument that they did not make that they claim and they come up and say, gee, if we had known it was a 214-01, we would have made this argument. But that's, if they would have made that argument, I'm sure that whatever it was, I don't think it exists. I think they put forward every argument they could in opposition to a motion to reconsider. And if they had raised the question, I think then the retort would have been, if what you're concerned with is we didn't put 214-01 in the title, we'll do that. If your concern is that we didn't serve you with process, we'll do that. And that could have been easily done and refiled and it would have been. I know I've turned on the jurisdictional front for a bit, but the equitable issue of this, revestment. In the history of the NRA, at least Jim Ball's reading of all the cases that deal with revestment, there has never been a situation like this where, after the entry of an order, for the purpose of my remarks, let's assume it's not a 214-01 and the court said, you know what, we're not going to treat it like a 214-01. The opposes then engage in hundreds of thousands of dollars worth of discovery, they go on for a three week trial, and that action, all that action is absolutely inconsistent with the order   even if you object to the original order, okay, even if you oppose that, when you go out there and you go out there and you go out there and you go out there and you go there and you go there voluntarily and without objection, that is an affordable principle called revestment, because this really  Didn't your opponent object to the timeliness of your motion for reconsideration? The bill is not one of the objectives of the motion to reconsider. The point is that they objected to continuing with the litigation. Well, I guess the whole purpose of the motion to reconsider is Judge McGrath entered an order saying okay, go ahead with the six-minute complaint. At that point, what are they supposed to do? Appeal? On what basis? There's not an impository order? There's certainly an order that if you believe it was entered in error and it wasn't a 214.01 petition, you could in order deny granting relief under 214.01 is an appealable order. And I think none of them wanted to take that route or the route of requesting permission from the file court to appeal. But the fact of the matter is they do nothing. They don't object to proceeding with this trial. So you're saying that once the court ruled against their position, they should have either sought an interlocutory appeal at that time or what? I think it comes from this court. And you can hear that they wanted to treat it as a decision on 214.01 and do that, which they clearly regarded as a decision on 214.01. They didn't do that. They did something that tells this court we object to proceeding with this trial. But to put the parties... The Supreme Court has said that an objection to your motion for reconsideration would defeat the revestment. That's why I'm asking for revestment. I've become a revestment expert, I guess. There was something that didn't take much to become an expert on it. And I'm not aware of any instance in which they clearly said this simply because somebody comes and asks for revestment. They objected to the timeliness of your motion. And you're saying that that doesn't matter? Yes, ma'am. I'm saying that their continued litigation of this case were used without further objection or request of any further objection. And then come back and say, or support a position that says,       should have called it. We didn't. We should have called it. We should have called it. We should have called it. We should  called it. We all acted as well. We wanted this court to adjudicate these disputes. It's an equitable principle. And the result here is to apply the rarely applied doctrine of revestment. When you put them in a situation where this happens, I can't think of another instance that talks about a situation where people have gone on and litigated for this long at this expense. And the fact of the matter is in none of the decided cases it was enough that they opposed a motion to reinstate revestment. They went ahead with discovery for two months and went through a two-day trial and the court said you can have revestment there. This is a much stronger case than that one. I'll give you a couple more minutes to wrap up. You need to have more questions. I'm asking that you give him more time because I think I used up a lot of his    Let's target it at ten minutes. That's great. That's great. Thank you. Thank you. Thank you. Thank you. Thank you. This is a case, let's talk about the trial case, involving elm Israel, his wealth and his freedom to decide whether he wanted to do it that well without any influence. We took the position that the 2012 document that the prior jury of his reasonable expectations set forth in the 2010 will, you get a shopping center worth $6 million, that that is an articulately reasonable expectation and that without the interference of his sister Diane, he would have kept it and received it. And we would have received it and received   received it and received it.  articulately    without the interference  sister Diane, he  received it. And we took the that that is an articulately reasonable expectation and that without the interference of his sister Diane, he would   it.    is an articulately reasonable  and that without the  of his sister Diane, he have received it. And we took the that that is an articulately reasonable expectation and that without the interference   Diane, he would have received it. We have a lot of case law that says we do not look at the title of a pleading or we look at the substance. And your opponent argues that the Freud emotion reconsideration was basically a 21401 in disguise because of the timing of it and what it sought to accomplish and that it was something that only could be accomplished through the 21401 petition. Therefore, we are going to  21401 petition. And on top of that, he says, and the opponent has kept calling it a 21401 as well. What is your response to that? Let me address your last point first. It is absolutely true that in 2018, that's why I was mentioning before about how to defend my own work, in 2018, we did in fact use those words in a filing to this court in 2018. None of that was discussed in 2015 when this was alive. And interestingly, my opponents were taking the opposite position in response to that argument when we were trying to get rid of the 215, I'm sorry, when we were trying to get rid of the gift claim on the motion to dismiss it. Because that's the context in which this conversation was made. In 2018, we filed a motion to dismiss the gift claim saying that was ruled upon when the DWP the appeal on the February 11th order    and that document was filed on March 27th. And between March 27th of 2015 and August 25th of 2015, there was no mention whatsoever of this filing, whatever it was, being filed on March 27th of 2015. No one mentioned it. Even though it was granted on July 22nd, right? So if I were on March 27th, it was granted on July 22nd. The first time that anybody ever called a petition was more than 30 days after that ruling. So we wouldn't even have, if we would have tried, the minute it was called a 214.01 petition, if we would have tried to go back and say, hey, I want to appeal now, we would have run into the deadline of filing a 214.01 appeal, because it would have been there more than 30 days prior. And the only time they ever talked about 214.01, the only time in 2015 that they talked about 214.01 was when this court asked them for their position on the 214.01 petition. And the court has talked to them and said, hey, can you tell us why we want jurisdiction in 214.01? Correct. So they responded to that. That's the first time they told this court that this is a 214.01 petition. Now, a day or two before the time Judge Tromp was ordered and the time they made their jurisdictional plan, there was a hearing in the circuit court, and at that time was the first chronological time that they mentioned the 214.01. But again, that was more than three days after the order that we would have had to appeal if we were sometimes supposed to have designed that this was a 214.01 petition that we were confronted with. There was no saying that this was a 214.01 petition. We specifically said, as it was pointed out, thank you for remembering that. We specifically pointed out in response to the filing of this subsequent motion to reconsider that they ought not to be doing this. As we went into this argument, the metaphor that I came up with to help explain this to somebody else is that the minute a notice of appeal is effective, the jurisdiction is like a baton in a relay race. The minute jurisdiction is effective in this court, the time of jurisdiction passes from the circuit court to this court. That occurred on March 19, 2015. And we told Judge McGrath that. I know Judge McGrath was well meaning. She was making every effort that she could to be conscientious. And she wanted to try to get a plan for this day in court. But the ruling that she made after March 19, she had no jurisdiction to make unless and only unless they brought in the petition. And we already have the problems with that. Now, I want to specifically talk about the court's order. Because that's important. When the court granted the motion for reconsideration, the single thing that you looked at is the addition that she wasn't granting the motion is the relief that she entered. Because the relief is to vacate the final judgment. That's what the rule says. If you don't have relief from the final judgment, you're supposed to file a petition. And the relief is the vacation of the portion of the prior order which said that the dismissal of the fifth amendment complaint was with prejudice. Basically, her order changed the with prejudice to without prejudice with relief from that. So, if that's the case, again, the only way that you can get to calling this a 2.201 is to somehow excuse the fact that the motion was malformed. There are cases that allow malformed 2.201 petitions to serve the function of a 2.201 petition. They're cited in the appellant's brief. But all the cases that have allowed malformed 2.201 petitions are cases where there's been a default judgment entered, and the court asked to set that aside, and the counsel who's filing the motion to set aside the default judgment doesn't express the default  at all. In fact, in the Supreme Court's decision in 2002, there were cases that were murky about what you were supposed to do when you were trying to set aside a default judgment. Now, Sartisian made it crystal clear what you're supposed to do. Sartisian did allow a malformed 2.201 petition to serve as a 2.201, but for anybody that comes after Sartisian, you can no longer claim ignorance about what you're supposed to do because it lays it out in crystal clear what you're supposed to do. And because this was not a 2.201, she had no jurisdiction. She had no power to enter that order that she entered on July 22nd. And that sort of leads us right down the path to revestment. Right. Okay. So, revestment. Mr. Dahl and I agree about, well, actually we've agreed about lots of things this case went on, but one thing we agree about is that neither one of us could find a case like this one where the trial court didn't follow the strictures of Sears and did in fact do what Sears prohibited. And we go down the road and have a jury trial and no one sitting at the table sets off a rocket for asking for a supervisory order or anything to stop the train from going down the tracks. Right. And unfortunately for the appellant here, people versus Bailey, which is the Supreme Court's decision from 2014, said that in order to have a revestment, let me tell you what happened. We plainly submitted an objection citing Sears. And by the way, in opposition to the request that they delay the briefing, we sent Sears to Grizzard in 2015. When they filed a motion to try to get more time to file their appellate brief, we also said, hey, we think that there shouldn't be a procedure. I asked your opponent this question about the objection to the timeliness of the motion for reconsideration. Can you speak to that? Because he says that my reading, if you objected timely and clearly, that would defeat a revestment of your argument. Tell me what your objection was and how it was made. On May 5th of 2015, we filed an opposition to what we labeled the second motion to reconsider. That's what we called it. I think he called it the further motion to reconsider. We called it the further motion to reconsider. The excuse says you aren't supposed to entertain serial motions to reconsider. That was the number one argument we made in our paper. That was filed on May 15th of 2015. Again, on June 12th, 2015, we filed an opposition to the second motion to reconsider. We called it the further motion to reconsider. That was the number one argument we made in our paper. The second motion says you aren't supposed to entertain serial motions to reconsider. That was the number one            entertain serial motions to reconsider. That was the number one argument we made in our paper. The third motion says you aren't         the number one argument we made in our paper. That was the number one argument we made in our paper. The           in our paper. That was the third motion we made in our paper. That was the fourth motion we made in our paper. That was     made   That was the fourth motion we made in our paper. That was the fifth motion we made in our paper. That was     made in our paper. That was the seventh motion we made in our paper. That was the eighth motion we made in our paper. That            tenth motion we made in our paper. That was the eleventh motion we made in our paper. That was the twelfth  we   paper. That   eleventh   twelfth   made in our paper.    fifteenth motion we made in our paper. That was the sixteenth motion we made in our paper. That was the ninth motion we made in our paper. That  the tenth motion we made in our paper. That was the twelfth motion we made in our paper. That was the twelfth        motion we made in our paper. Was the sixth motion on February 4th 2014. That was the case that Harry Israel was presenting to Judge McGrath in the jury. So when Judge McGrath made the ruling, your case stops on February 4th 2014. And then it was changed again in February 2014. There was also an interim change, but that ended up being rolled into the February 2014 change. So the important thing that the court was grappling with was hey, this tort of undue influence supposedly caused Harry to take the 2010 trust, to change it to what it was in 2012 in  that was unfavorable to Harry, and then change it again in February 2014 to change it in a way that was unfavorable to Harry. Now, that's why the judge made the ruling that she did, because the plaintiff, through his opinion, through what he was arguing, was definitely what happened. Now, his opinion... I don't understand your argument, but what your opponent says is that the entire pattern of behavior throughout that period of time would have established kind of a totality of the picture, if you will, of the kind of influence that Diane was exerting over her father. And what would have been the harm in allowing the additional... If it's irrelevant, what would have been the harm? How would it have hurt to keep it out, or what would it have hurt to allow it in? Well, again, the reason that we objected to the evidence is because we believe that the relevant timeframes are the things that we just talked about. The cases on this, that is, the appellate panel, and the evidence that was proposed to be offered was outcome determinative. And we've not changed the outcome. And that argument has been made lots of times. We've had multiple cases where that exact argument was made that the evidence was relevant to the time frame. We've had multiple     that the evidence was relevant to the time frame. We've had multiple cases where that exact argument was made that the time frame was relevant to the time frame. The evidence that was kept out was evidence that was supposedly provative of what the events were in 2014. The court that they ultimately took to the jury did not rest on 2014. They abandoned that theory completely. The important time period was July of 2012. Under those circumstances, we didn't make a whole lot of arguments about stuff that happened after that. We didn't because the deadline that they told us about was February of 2014. That's what they told us when we went into trial. They changed that theory as of February of 2014. They limited the case that went to the jury to a court of undue influence that took place in July of 2012. That was the argument that they made to the jury. In 2012, Diane exerted undue influence. That was their jury instruction. We objected to that jury instruction on the grounds that we're talking about because we asked for a limiting instruction about evidence after that. That was denied us. So, to my point of view, they got a fair shot at this to go directly to the jury.   was the only one that was able to do that. There was nothing unique about this case. During that time, this case was going on. It went on all  the time. They were taking the position that Aaron's faculties were allowing them to be conspicuous and superior. They took the opposite position, obviously, at trial. The reason I bring that up is not to point out the fact  Aaron had multiple opportunities to actually make comment on the whole concept of this case. They filed a claim that Aaron was under influence. They filed this case in 2011. This particular version of it was filed in 2012. This is     multiple opportunities to make comment on the case. He commented on it writing himself as a declaration. He basically ideated it. Yes. He also told two separate witnesses who interviewed him without Diane anywhere around. Those witnesses described in detail the statements that Aaron made to them . Under those circumstances the idea that two little things would have happened and then all of that amount of evidence I just think there is no case that can be made for out temperature analysis. One thing that is important and I think at various points in this issue        is that         for out temperature analysis. I think there is no Thank you.